DS136928



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF TEXAS

Joe Hunsinger
  Plaintiff Pro-Se'

Case No:

V.

Fashion Nova Inc.
  Defendants

3 -22 CV-534-L

# COMPLAINT

## 1.0  PARTIES

1.1   Joe Hunsinger is a an individual citizen of Texas and a resident of this District.

1.2   Defendant Fashion Nova Inc. is a Domestic corporation with its principal place of business in the State of California.  Los Angeles County.

1.3   Defendant Fashion Nova Inc. can be served by their address 2801 E. 46th Street, Vernon, California 90058

## 2.0  JURISDICTION AND VENUE

2.1   This court has personal specific jurisdiction pursuant to 28 USC Section 1331 and 47 USC Section 227.

2.2   Supplemental jurisdiction for Plaintiffs state law claims arise under 28 USC Section 1391(b)(2).

2.3   This Court has personal specific jurisdiction over Defendant because defendant made calls to Plaintiff in this District and Defendant conducts business in the State of Texas.

## 3.0  PRELIMINARY STATEMENT

3.1    This is an action for damages brought by an individual consumer for violations of the TCPA, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive and nuisance telemarketing practices.

3.2    Senator Hollings, the TCPA's sponsor, described these call as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of be; they hound us until we want to rip the telephone out of the wall."  Defendant's actions has caused Plaintiff to suffer physical sickness.

3.3    According to findings by the FCC, the agency congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls.

3.4    The national DNC registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  Plaintiff hereby requests a copy of Defendants DNC Policy.

3.5    The TCPA regulations define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

3.6    Telemarketing occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services.

3.7    Neither the TCPA nor its implementing regulations require an explicit mention of a good, product, or service – where the implication of an improper purpose is "clear from the context."

3.8   In other words, "offers that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.

3.9   If a call is not deemed telemarketing, a Defendant must nevertheless demonstrate that it obtained the Plaintiffs prior express consent according to 47 CFR Section 64.1200(a)(1).

3.10  The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages.

3.11  "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."

3.12  Plaintiff has been harmed by Defendants' acts because his privacy has been violated.  Plaintiff was subject to annoying and harassing telephone calls (texts) that constitute a nuisance.

3.13  Telemarketers must obey the prohibitions in the TCPA.

3.14  Telemarketing is defined as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or charitable contribution by use of one or more telephones and which involves more than on interstate telephone call.

3.15  Plaintiff establishes injury in fact, if he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

3.16  Plaintiff has the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA.

3.17  Plaintiffs "express consent" is not an element of Plaintiffs prima facie case, but is an affirmative defense for which the Defendant bears the burden of proof.

3.18  One single unsolicited marketing text or call is all it takes for a Plaintiff to have standing and bring suit against a violator of the TCPA.

3.19  The TCPA does not bar all business-related text messaging, but instead, focuses, in part, on cellular calls and text messages that are for the purpose of soliciting new or additional business.

3.20  Defendants actions are a pattern and practice over time.

3.21  Defendants, in its alleged violation, was aware of the conduct and allowed it to continue.

3.22  The impersonal and generic nature of Defendants text message(s), demonstrate that Defendant utilized an ATDS in transmitting the message.

3.23  Text message advertisements and the use of a short code, support an inference that the text messages use ATDS.

3.24  Plaintiff has alleged facts sufficient to infer text messages were sent using ATDS – use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS.

3.25  Defendant sent Plaintiff a generic message.

3.26  Defendant used an ATDS to send messages to the Plaintiff.

3.27  Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the capacity of store telephone numbers and to dial such number from a list.

3.28 Defendants unsolicited calls/text message(s) caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants text messages also inconvenienced Plaintiff and caused disruption of his daily life.

3.29 Unwanted "Robocalls" are the number one complaint in America today. Americans received over 47 billion robocalls just year.

3.30 Plaintiff estimates he has received tens of thousands of unauthorized and unwanted text messages and calls in his lifetime from telemarketers. Some have been from repeat violators and some have been from single call/text violators. The Bureau of Labor Statistics tells us there are 134,800 telemarketers in the USA. If this information is correct American consumers could quite possibly receive 369.31 calls per day and we have to tell the telemarketers is to place us on their do not call list and we won't hear from them in another 12 months, and then process begins all over again? Plaintiff does not want to have his phone ring or text 369.31 times a day from telemarketers. Plaintiff does not even want one telemarketer to call him. There is a reason they say we as a nation may disagree on many issues, but when it comes to unwanted telemarketing (Robocalls/texts) we all agree that we do not like them.

3.31 The contempt from Senator Hollings was he even wanted to do away with all telemarketers, period. Plaintiffs pleading as mentioned above are clear and give an insight on where Plaintiff set of mind. How he wants to left alone and unbothered by telemarketing calls/texts.

3.32 The Do Not Call provisions of the TCPA cover any plan, program or campaign to sell goods or services through interstate phone calls. This includes calls by telemarketers who solicit consumers, often on behalf of third party sellers.

3.33 The TCPA has a "safe harbor" for inadvertent mistakes. If a telemarketer can show that, as part of its routine business practice, it meets all the

requirements of the safe harbor, it will not be subject to civil penalties or sanctions for mistakenly calling a consumer who has asked for no more calls, or for calling a person on the registry.

3.34 Defendants are telemarketers defined by the TCPA.

3.35 Defendants do not have a "safe harbor" as defined by the TCPA for inadvertent mistakes, because they did not send a copy of their DNC Policy to the Plaintiff when he requested it.

3.36 Plaintiffs complaint seeks money damages and injunctive relief from Defendants illegal conduct.

3.37 This private cause of action is a straight forward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy.

3.38 Plaintiffs Complaint notifies the Defendant of the claim against it and the sufficiency of the facts provided.

3.39 The TCPA was enacted to prevent companies like Defendant from invading Plaintiffs' privacy as explained in paragraph 3.28 and 3.29.

3.40 Defendant uses telemarketing to obtain new customers.

3.41 Plaintiff, over 31 days ago, has registered his phone number with the DNC Registry, see 47 CFR Section 64.1200(b)-(d).

3.42 The court must accept as true all well-pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff. Plaintiff has provided exhibits of his phone being registered on the DNC Registry, Screenshots

of the calls/texts from Defendant or their agents, and other information about the Defendant.

3.43  Defendants conduct business in the State of Texas.

3.44  Defendants must obey the laws of Texas.

3.45  Defendants violate the laws of Texas.

3.46  Defendants know the laws of the TCPA.

3.47  Defendants willfully violated the laws of the TCPA.

3.48  Plaintiffs Complaint adequately identifies the acts and events that entitle him to relief and are not threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.

3.49  Defendant uses third party vendors to initiate calls on their behalf.

3.50  Defendant also uses employees to initiate calls on its behalf.

3.51  Plaintiffs description of an event that happened which created a right of action under the TCPA and exhibits provided are factual support, sufficient for Plaintiff to state a claim.

3.52  Plaintiff wants to use our nations telecommunications infrastructure without harassment.

3.53  Defendant uses more than one phone numbers in is business.

3.54  If Defendant(s) want to avoid a TCPA lawsuit, all they have to do is not break the laws in the TCPA.

## 4.0  VICARIOUS LIABILITY

4.1    At all times relevant the the events giving rise to this lawsuit, Defendant acted through its agents and is therefore liable for such actions pursuant of vicarious liability principles.

4.2    Whenever it is stated herein that Defendant engaged in any act or omission, the statement includes the acts or omissions by Defendant, its agents, its employees, its representatives and others with actual or apparent authority to act on behalf of and bind the Defendant.

4.3    Under the TCPA corporate offers can be held liable under the laws of the TCPA.

## 5.0  QUESTIONS OF LAW

5.1    There are well defined and nearly identical questions of law and fact that affect all parties.  Such common questions of law and fact include, but are not limited to, the following:

5.2    Whether Defendant(s) placed such telephone calls to the Plaintiff;

5.3    Whether Defendant(s) TCPA violations and conduct was knowing and/or willful:

5.4    Whether Defendant(s) can meet their burden of showing that they clearly and unmistakably obtained "prior express consent" to make such calls/texts to the Plaintiff;

5.5    Whether Defendant(s) are liable for damages to the Plaintiff, as well as the amount to of such damages;

5.6    Whether Defendant(s) identified themselves to the Plaintiff or if their agents identified the entity on whose behalf the call/text was being made;

5.7   Whether Defendant(s) sent Plaintiff their DNC policy when it was requested;

5.8   Whether Defendant(s) uses telemarketing to obtain new customers;

5.9   Whether Defendant(s) have a written DNC policy;

5.10  Whether Defendant(s) written DNC policy was shared with anyone "on demand.";

5.11  Whether Defendant(s) can prove they trained their employees about the telemarketing rules and laws set in place;

5.12  Whether Defendant(s) have maintained a list of persons that they may not contact;

5.13  Whether Defendant(s) have a process in place to prevent phone calls to either numbers on the National Do Not Call List or numbers on the telemarketers internal do not call list;

5.14  Whether Defendant(s) have a process in place to monitor calls to prevent violations of the do not call list;

5.15  Whether Defendant(s) have maintained an errant list of all call that violate the do not call regulations;

5.16  Whether Defendant(s) can prove they used TCPA compliant vendors;

5.17  Whether Plaintiff opted out of receiving calls/texts from Defendant.

5.18  Whether Defendant(s) honored Plaintiffs opt out/stop request.

5.19  Whether Defendant(s) had reason to know, or should have known that its conduct would violate the statute.

5.20  Whether Plaintiff is entitled to injunctive relief;

5.21  Whether Defendant(s) should be enjoined from engaging in such mentioned conduct in the future;

5.22  Common questions in this case have common answers.

## 6.0  FACTUAL ALLEGATIONS
## AGAINST FASHION NOVA INC.

6.1    On 8-30-2021 at 8:31 PM Plaintiff received **one** unauthorized and unwanted telemarketing text message to his cell phone ending in 2367 from Defendant or their agent form short code 36682.

6.2



6.3    This is a violation of 47 CFR Section 64.1200(c)(2) and CFR 64.1200(a)(1).

6.4    Short code 36682 belongs to Defendant.

6.5    Along with each text message, Plaintiff additionally received discount coupons.  See the following coupon:

6.6

9:14 🖼          5G◢ 67% 🔋

Fashion Nova: No
Climbing Crates For
This One 🔥 40% Off
EVERYTHING Get Ur
Fall 'Fits NOW! No Code
Needed, Shop Away
http://fashionnova.com
#sms/l/DgA/A6MnG .

Mon 8:31PM

◁      ○      ▢

6.7   Along with some of the text messages Defendant sent to the Plaintiff, the pictures change back and forth. Non stop. See the following:

6.8                                                    6.9



6.10  Plaintiff continued receiving other texts from Defendant.

6.11  On 9-7-2021 Plaintiff received one text from Defendant at 9:08 PM.

6.12  Defendant utilizes bulk SPAM text messaging, or SMS marketing, to send unsolicited text messages, marketing and advertising Defendant's merchandise, including at least one unsolicited text messages to Plaintiff.

6.13  Defendant sent text messages to Plaintiff for the purpose of encouraging the purchase of clothes and accessories sold by Defendant.

6.14  Defendant engaged in Telemarketing by sending text messages to Plaintiff which promoted the purchase of Defendant's merchandise.

6.15  At no time did Plaintiff provide Plaintiff's cellular phone number to Defendant through any medium, nor did Plaintiff consent to receive such unsolicited text messages.

6.16  Plaintiff has never signed-up for, and has never used, Defendant's services, and has never had any form of business relationship with Defendant.

6.17  Through the unsolicited SPAM text message, Defendant contacted Plaintiff on Plaintiff's cellular telephone regarding an unsolicited service via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. §227(b)(1)(A).

6.18  Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

6.19  On 10-10-2021 at 8:48 AM Plaintiff send a text to the Defendant telling them to Stop.

6.20  Defendant responded back:
      Fashion Nova:  You
      are unsubscribed
      from messaging.
      No more
      messages will
      be sent.  Help at

support@attentiv
emobile.com or
844-293-7265
Oct 10, 8:49AM

6.21  Upon information and belief, this ATDS has the capacity to store numbers on a list and to dial numbers from a list without human intervention.

6.22  The impersonal and generic nature of the text messages that Defendant sent to Plaintiff demonstrate that Defendant used an ATDS to send the subject text messages.

6.23  Upon information and belief, Defendant used a combination of hardware and software systems which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention.

6.24  Upon information and belief, Defendant used a device to send the subject text messages to Plaintiff that stores numbers and dials them automatically to a store list of phone numbers as part of scheduled campaigns.

6.25  The unsolicited text message by Defendant, or their agents, violated 47 U.S.C. § 227(b)(1).

6.26  The unsolicited text message by Defendant, or their agents 47 CFR  Section 64.1200(b)(c)(1) when they sent a text message to Plaintiff at 9:08 PM.

6.27 Plaintiff is informed and believes and therefore alleges that texts that Defendant placed to him were made using an automatic telephone dialing system.

6.28 A telemarketer must provide their name, and the corporate name or registered name of the organization (to the consumer) that they are contacting consumers on behalf of.  In this case, Defendant did provide their name to the Plaintiff.

6.29  Defendant used an automatic telephone dialing system as defined by 47 USC Section 227(a)(1) to place calls to Plaintiff.

6.30  The context of the generic message and the existence of similar messages raise an inference that an ADS was used by the Defendant.

6.31  Plaintiff send Defendant a letter via certified mail, 7012 3460 0002 6771 2411, requesting a copy of their companies DNC Policy.

6.32  Plaintiffs DNC Policy request letter shows a date of 10-11-2021.

6.33  Defendant received Plaintiff's DNC Policy request on 10-18-2021.

6.34  Defendant did not send Plaintiff their company's DNC Policy.

6.35  Defendant violated CFR 64.1200(d)(1).


# 7.0  FACTUAL ALLEGATIONS
## CONTINUED

7.01    Plaintiff, searching the internet found Defendant's main headquarters located in California.

7.02  Plaintiff searched Defendant on Pacer [and also paid their fees to search and look at pleadings] and did find other complaints against the Defendant for violations of the TCPA.

7.03  Plaintiff, at no time, gave Defendant his "prior express consent" or "express consent" to be contacted by calls or text messages.

7.04 Part of Plaintiffs discovery will will be finding out if Defendant has a company wide pattern or practice of engaging in the alleged illegal practices at issue in my case.  Plaintiff is proffering that a number of similar incidents have occurred around the country to other everyday people.

7.05 In this alleged action, it is the Plaintiffs belief the Defendant uses short codes to run his telemarketing campaign to text people from a phone number.

7.06 The calls and texts placed by the Defendant was not necessitated by an emergency purposes as defined by 47 USC Section 227(b)(1)(A).

7.07 Defendants commercial telemarketing texts were transmitted to Plaintiffs cellular telephone, and within the time frame relevant to this action.

7.08 Defendant initiated or caused to initiate illegal calls and texts to Plaintiff.

7.09 Plaintiff is not a customer of Defendant and has not provided defendant with his personal information or telephone number, or sought out solicitation from the Defendant or their agents.

7.10 It is Defendants burden to prove they has "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system."

7.11 At no time did Plaintiff provide prior express written consent, or even prior permission, for the Defendant or their agents to call the Plaintiff.

7.12 Plaintiff does not have and has never had an established business or personal relationship with the Defendants.

7.13 The text received by the Plaintiff from the Defendant or their agent was for the purpose of encouraging the purchase of rental of, or investment in, property, goods, or services.  The call therefor qualifies as telemarketing.

7.14  Plaintiff is the subscriber of phone number ending in **2367** and is financially responsible for phone service to said number.

7.15  Plaintiff's phone number ending in **2367** is primarily used for personal, family, and household use.

7.16  Upon information and belief, Defendants calls harmed the Plaintiff by causing the the very harm that Congress sought prevent – that is the "nuisance and invasion of privacy" and a Plaintiff suffered a concrete and particularized harm.

7.17  Upon information and belief, Defendants texts harmed Plaintiff by intruding upon Plaintiffs seclusion, lost time attending to unsolicited, unwanted and unauthorized calls, decreased phone battery life, need for more frequent re-charging of the battery, annoyance, and frustration.

7.18  The FCC has instruct that sellers such as Defendants may not avoid Liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.  Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separarately in order to obtain effective relief.  As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a

few of them is unlikely to make a substantive difference for consumers
privacy."

May 2013 FCC Ruling. 28 FCC Red at 6588(Paragraph 37) (internal citations
omitted).

7.19 In its January 4, 2008 ruling, the FCC reiterated that a company on whose
behalf a telephone call is made bears the responsibility for any violations.   id.
(specifically recognizing "on behalf of" liability in the context of an autodialed or
prerecorded message call sent to a consumer by a third party on another entity's
behalf under 47 USC Section 227(b).

7.20 The FCC has explained that its "rules generally establish that the party on
whose behalf a solicitation is made bears ultimate responsibility for any
violations." See in re Rules & Regulations Implementing the TCPA, CC Docket No.
92-90, Memorandum Opinion and Order, 10 FCC Red 12391, 12397 (Paragraph
13)(1995).

7.21 Defendant does not access the national Do-Not-Call database.  Defendant
cannot demonstrate their violations are in error, does not have written procedures
to comply with the Do-Not-Call rules, and does not train its personnel in
compliance and procedures pursuant the Do-Not-call rules.

7.22 On May 9, 2013, the FCC released a Declaratory Ruling holding that a
corporation or other entity that contacts out is telephone marketing "may be held
vicariously liable under federal common law principles of agency for violations
of ...section 227(b) that are committed by third-party telemarketers" See In re
Joint Petition filed by Dish Network, LLC., et al, for Declaratory Ruling Concerning
the TCPA Rules, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Red 6574, 6574
(paragraph 1)(May 9, 2013)("May 2013 FCC Ruling").

7.23 More specifically, the May 2013 FCC Ruling held that, even in the absence of
evidence of a formal contractual relationship between the seller and the

telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.   28 FCC Red at 6586 (paragraph 34)

7.24  Defendant is not a tax-exempt non profit organization.

7.25 The FCC has repeatedly rejected a narrow view of the TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing cal, id at 6587 n. 107.

7.26 The may 2013 Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller alows the outside sales entity access to information and systems that normally would be within the Sellers's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information.  The ability by the outside sales entity to enter consumer information into the seller's sales or customer system, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant.  It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer ti cease that conduct.

28 FCC Red at 6592 (paragraph 46).

7.27 Defendants were legally responsible for ensuring that their vendors complied with the TCPA, even if Defendants did not themselves make the calls.

7.28  Defendant were legally responsible for ensuring that their vendors complied with the TCPA, even if Defendants did not themselves make the calls.

7.29  Defendants knew (or reasonably should have known( that their vendors were violating the TCPA on their behalf, and failed to take effective steps within their power to force the telemarketer to cease that conduct.

7.30  Defendants calls were transmitted to Plaintiffs cellular telephone, and within the time frame relevant to this action.

7.31  Upon information and belief, Defendants calls harmed the Plaintiff by causing the the very harm that Congress sought prevent – that is the "nuisance and invasion of privacy" and a Plaintiff suffered a concrete and particularized harm.

7.32  Upon information and belief, Defendants calls harmed Plaintiff by intruding upon Plaintiffs seclusion.

7.33  In other TCPA Complaints against the Defendant, Defendant, for the most part, does not file an Answer but instead files a Motion To Dismiss.

7.34  Defendant is always presenting the same old outdated arguments while ignoring the general principal that the TCPA is to be construed liberally in favor of the consumers.  See Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 656 (4th Cir. 2019).

7.35  Defendant always argues a Plaintiff's private right of action.  An argument that is pretty much a non-burger.

7.36  Section 64.1200(d) provides a private right of action. Such a holding is consistent with the overall principal that the TCPA should be applied broadly to

protect consumers and the rule that "[i]f proposed Case interpretations of the TCPA are equally plausible, the scales tip in favor of the consumer." Klein v. Commerce Energy, Inc., 256 F. Supp. 3d 563, 576 (W.D. Pa. 2017).

7.37 Defendant always tries to steer attention away and ignore the fact that section 34.1200(d) and 227(c) are similar in that they are both principally concerned with the protection of individual privacy rights. See Rosenberg, 435 F. Supp. 3d at 324 (noting that the primary purpose of § 227(c) is to ensure that subscribers "avoid receiving telephone solicitations to which they object."). These courts have reasoned that the do-not-call provisions outlined in section 64.1200(d) furthers that purpose and comports with that section of the statute. Id.

7.38 As a result of Defendant illegal conduct, Plaintiff is entitled to $500 in damages for each such violation of the TCPA. This is for each and every violation, whether Defendants committed multiple violations with a single phone call.

7.39 As a result of Defendant illegal conduct, Plaintiff is entitled to $500 in damages for each such violation of the TCPA. This is for each and every violation, whether Defendant committee multiple violations with a single text. The number of texts are irrelevant.

## 8.0 STANDING

8.01 Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision.

8.02 Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.

8.03 For an injury to be "concrete" it must be a de facto injury, meaning that it actually exists. In Plaintiffs case, Defendant sent a text messages to Plaintiff's

cellular telephone, using an ATDS. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and de facto.

8.04  For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." In Plaintiffs case, Defendant invaded Plaintiffs privacy and peace by texting his cellular telephone, and did this with the use of an ATDS.  Furthermore, Plaintiff was distracted and annoyed by having to take time, opening and reading the text message. All of these injuries are particularized and specific to Plaintiff.

8.05  Plaintiffs case passes The " Traceable to the Conduct of Defendant" Prong.

8.06  The second prong to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.  The above text message was directly and explicitly linked to Defendant.  The number from which the text was sent belongs to Defendant. This text message is the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that her injuries are traceable to the conduct of Defendant.

8.07  Plaintiffs case passes the " Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong,

8.08  The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion In the present case, Plaintiff's Conclusion include a request for damages for each text message made by Defendant, as authorized by statute in  47 USC. Section 227. The statutory damages were set by Congress and specifically  redress the financial damages suffered by Plaintiff.

8.09  Plaintiff, under his 14 Amendment rights, has right to bring this action to be heard in front of a jury.

8.10  Because all standing requirements of Article III of the US Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## COUNT 1

11.01  Plaintiff re-alleges and incorporates the above paragraphs.

11.02   Defendant violated 47 USC Section 227(b)(1)(A)(iii) by placing **thirteen** (non emergency) solicitation calls/texts to the Plaintiff.

11.03 Defendant must pay Plaintiff $500 for each text placed to Plaintiff.

## COUNT 2

12.01 Plaintiff re-alleges and incorporates the above paragraphs.

12.02 Defendant transmitted **thirteen** solicitation calls/texts to Plaintiffs cellular phone number, which was registered on the Do Not Call registry, violating 47 CFR Section 64.1200(c)(2) and CFR 64.1200(a)(1).

12.03 Defendant must pay Plaintiff $500 for each text placed to Plaintiff.

## COUNT 3

13.01 Plaintiff re-alleges and incorporates the above paragraphs.

13.02 Defendant knew or should have know that Plaintiff had not given his prior express invitation or consent to receive its texts messages violating CFR 64.1200(c)(2)(ii).

13.03 Defendant must pay Plaintiff $500.

## COUNT 4

14.01 Plaintiff re-alleges and incorporates the above paragraphs.

14.02 Defendant initiated calls/texts to the Plaintiff, despite the fact that Plaintiffs phone number is listed on the DNC list, and does not have polices and written procedures in place that must meet the standards of CFR 64.1200(d)(1)-(6).

14.03 Defendant must pay Plaintiff $500.

## COUNT 5

15.01 Plaintiff re-alleges and incorporates the above paragraphs.

15.02 Plaintiff has requested Defendants Do-Not-Call Policy, and has not received it. It is a violation of CFR 64.1200(d)(1).

15.03 Defendant must pay Plaintiff $500 for not providing their DNC Policy.

## COUNT 6

17.01 Plaintiff re-alleges and incorporates the above paragraphs.

17.02 Defendant sent four text to Plaintiff at 7:00 AM.   A violation of 47 CFR Section 64.1200(b)(c)(1).

17.03 Defendant must pay Plaintiff $500.

## COUNT 7

16.01 Plaintiff re-alleges and incorporates the above paragraphs.

16.02 Defendant made calls to Plaintiffs phone ending in **2367** intentionally or knowingly and the calls were not accidental.

16.03 Pursuant to TBCC Section 305.053, Plaintiff sues here for monetary damages.

16.04 Pursuant USC Section 227(c)(5) and 47 CFR Section 64.1200(a)(2), treble the $500 statutory damages to be recoverable by Plaintiff against the Defendant to $1500 for each transmitted text Defendant placed and for violating the the DNC request.

16.05 Defendant must pay Plaintiff $1500 for each violation and text transmitted to Plaintiff.

## COUNT 8

17.01 Plaintiff re-alleges and incorporates the above paragraphs.

17.02 Pursuant to 47 USC Section 227(b)(3)(A) and TBCC Section 305.053, the court following the trial of this action should issue an order permanently enjoining Defendant and its agents from engaging in any further conduct with respect to Plaintiff which violates the rules and regulations of 47 USC Section 227.

## COUNT 9

18.01 Plaintiff re-alleges and incorporates the above paragraphs.

18.02 Defendant intentionally intruded on Plaintiffs solitude, seclusion, and private affairs by transmitting unsolicited telemarketing calls to his cellular phone. Defendants intrusion would be highly offensive to a reasonable person.

18.03 The repeated autodialed calls to Plaintiffs cellular phone have caused him emotional harm and distress, frustration, aggravation, wasted time, a nuisance and other losses.   Defendant's actions has caused Plaintiff to suffer physical sickness.

18.04      Plaintiff seeks to recover punitive and actual damages, including his damages for mental anguish, to be proven at trial.  Mental anguish is one of the

torts for which Plaintiff can recover mental-anguish damages without proving physical injury.

## **TRIAL BY JURY**

20.01    Plaintiff demands a trial by jury under the 7th Amendment of the US Constitution.

## **CONCLUSION**

Plaintiff has read Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n which pretty much establishes the conduct for attorneys and references abusive litigation tactics from attorneys conduct.   Plaintiff believes if Defendant would read Dondi and instruct their attorney to send copies of the filings and emails between the Plaintiff and Defendants attorney, this would keep the Defendants attorney from "poking a stick at Plaintiffs ribs" just to upset him and try to prolong the hours he will be charging his client.

Plaintiff requests everything he has asked for in his Complaint and other relief as the Court deems necessary.

Joe Hunsinger – Pro se
7216 CF Hawn Frwy.
Dallas, Texas 75217
214-682-7677
joe75217@gmail.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JOE HUNSINGER | FASHION NOVA INC. |

| (b) County of Residence of First Listed Plaintiff  DALLAS | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| PRO SE    3-22CV0534-L | RECEIVED  MAR - 7 2022  CLERK U.S. DISTRICT COURT  NORTHERN DISTRICT OF TEXAS |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane    365 Personal Injury - | 690 Other | 423 Withdrawal | 376 Qui Tam (31 USC |
| 130 Miller Act | 315 Airplane Product    Product Liability | | 28 USC 157 | 3729(a)) |
| 140 Negotiable Instrument | Liability    367 Health Care/ | | | 400 State Reapportionment |
| 150 Recovery of Overpayment | 320 Assault, Libel &    Pharmaceutical | | **PROPERTY RIGHTS** | 410 Antitrust |
| & Enforcement of Judgment | Slander    Personal Injury | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 330 Federal Employers'    Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted | Liability    368 Asbestos Personal | | 835 Patent - Abbreviated | 460 Deportation |
| Student Loans | 340 Marine    Injury Product | | New Drug Application | 470 Racketeer Influenced and |
| (Excludes Veterans) | 345 Marine Product    Liability | | 840 Trademark | Corrupt Organizations |
| 153 Recovery of Overpayment | Liability    **PERSONAL PROPERTY** | | 880 Defend Trade Secrets | 480 Consumer Credit |
| of Veteran's Benefits | 350 Motor Vehicle    370 Other Fraud | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| 160 Stockholders' Suits | 355 Motor Vehicle    371 Truth in Lending | 710 Fair Labor Standards | | 485 Telephone Consumer |
| 190 Other Contract | Product Liability    380 Other Personal | Act | **SOCIAL SECURITY** | Protection Act |
| 195 Contract Product Liability | 360 Other Personal    Property Damage | 720 Labor/Management | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | Injury    385 Property Damage | Relations | 862 Black Lung (923) | 850 Securities/Commodities/ |
| | 362 Personal Injury -    Product Liability | 740 Railway Labor Act | 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | 751 Family and Medical | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | Leave Act | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | [x] 440 Other Civil Rights    **Habeas Corpus:** | 790 Other Labor Litigation | | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting    463 Alien Detainee | 791 Employee Retirement | **FEDERAL TAX SUITS** | 895 Freedom of Information |
| 230 Rent Lease & Ejectment | 442 Employment    510 Motions to Vacate | Income Security Act | 870 Taxes (U.S. Plaintiff | Act |
| 240 Torts to Land | 443 Housing/    Sentence | | or Defendant) | 896 Arbitration |
| 245 Tort Product Liability | Accommodations    530 General | | 871 IRS—Third Party | 899 Administrative Procedure |
| 290 All Other Real Property | 445 Amer. w/Disabilities -    535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment    **Other:** | 462 Naturalization Application | | Agency Decision |
| | 446 Amer. w/Disabilities -    540 Mandamus & Other | 465 Other Immigration | | 950 Constitutionality of |
| | Other    550 Civil Rights | Actions | | State Statutes |
| | 448 Education    555 Prison Condition | | | |
| | 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: USC 227 AND CFR 64.1200 |
|---|---|
| | Brief description of cause:  ILLEGAL AND UNWANTED TEXT MESSAGES |

| VII. REQUESTED IN COMPLAINT: | [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint:  JURY DEMAND: [x] Yes  [ ] No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):*    JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|

| DATE  2-26-2022 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|



Joe Hunsinger
7216 CF Hawn Frwy.
Dallas, Texas 75217

CERTIFIED MAIL

7014 2120 0000 8774 8108

Federal Court
1100 Commerce St # 1452
Dallas, TX 75242

RECEIVED - 8

MAR - 7 2022

MAILROOM

U.S. POSTAGE PAID
$6.31